**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: MOVEIT CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:23-md-03083-ADB<br><br>Judge Allison D. Burroughs |
| This Document Relates To:<br><br>1:23-cv-13014-ADB<br>1:23-cv-13015-ADB<br>1:23-cv-13026-ADB<br>1:23-cv-13019-ADB<br>1:23-cv-13018-ADB<br>1:23-cv-13020-ADB<br>1:23-cv-12524-ADB<br>1:23-cv-13025-ADB<br>1:23-cv-12736-ADB<br>1:24-cv-10031-ADB<br>1:23-cv-13077-ADB | |

**DECLARATION OF GARY F. LYNCH IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**

I, Gary F. Lynch, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am an attorney licensed in Pennsylvania and New York and have been admitted to practice before the Supreme Court of the United States and numerous federal appellate and district courts. I have been appointed by this Court to serve as Co-Lead Counsel for MDL Plaintiffs. I and have been active in all aspects of this Litigation. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Declaration"). The information set forth in this Declaration is based upon my personal knowledge.

2. I am a founding member of the law firm of Lynch Carpenter, LLP ("Lynch Carpenter" or the "Firm") and have been engaged in the practice of law for over thirty years, with

the majority of my career spent representing plaintiffs in the litigation of complex civil cases and class actions. The primary focus of my practice is data breach and data privacy litigation.

3. I have spent the bulk of my professional time representing individual and institutional plaintiffs in class action and multi-district litigation throughout the country and am currently serving, or have served, as lead, co-lead counsel in numerous federal and state class actions and multidistrict proceedings, including, among others: *In re Wawa, Inc. Data Security Litig.*, No. 19-cv-6019 (E.D. Pa) (appointed co-lead of consolidated data breach on behalf of financial institution plaintiffs and reach a $37 million settlement for the financial institution class, as mediated by former Magistrate Judge Diane Welsh; preliminary approval granted);.*In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. 1:17-md-02800 (N.D. Ga.) (appointed co-lead MDL counsel on behalf of financial institution plaintiffs and reached a $7.75 million settlement for the financial institution class); *In re Home Depot Data Breach Litig.*, No. 1:14-md-2583 (N.D. Ga.) (same and 27 million settlement for the financial institution class); *First Choice Fed. Credit Union v. The Wendy's Co*., No. 2:16-cv-00506 (W.D. Pa.) ($50 million settlement for the financial institution class); *Dittman v. UPMC d/b/a The Univ. of Pittsburgh Med. Ctr.*, No. GD14-003285 (Pa. Ct. Com. Pl.) (lead counsel on behalf of plaintiffs after obtaining reversal in the Pennsylvania Supreme Court); *Veridian Credit Union v. Eddie Bauer LLC*, No. 2:17-cv-356 (W.D. Wash.) ($2.7 million settlement for the financial institution class).

4. In addition to serving as lead counsel in major data breach litigation, I have also served in leadership committee positions in many other data breach/privacy cases, including: *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 2522 (D. Minn.) (appointed to the Executive Committee managing the litigation on behalf of all plaintiffs (consumers, financial institution, and shareholders). The case was ultimately settled for $10 million (for consumers) and

$39 million (for financial institutions)); *In re Marriott Int'l Customer Data Security Breach Litig.*, MDL No. 2879 (D. Md.); *In re: Cmty. Health Sys., Inc., Customer Sec. Data Breach Litig.*, MDL No. 2595, 15-cv-0222 (N.D. Ala.); *In re: Arby's Rest. Group, Inc. Data Sec. Litig.*, 17-mi-55555 (N.D. Ga.); *Greater Chautauqua Fed. Credit Union et al v. Kmart Corp.*, No. 15-cv-02228 (N.D. Ill.); *In re Vizio, Inc. Consumer Privacy Litig.*, MDL No. 2693 (C.D. Cal.) (consumer privacy breach, steering committee; $17 million settlement);

5. I make this Declaration in support of the proposed Settlement Agreement reached between the parties after extensive arm's-length negotiation, a true and accurate copy of which is being filed concurrently herewith. Based upon my experience serving as lead counsel, and in other leadership positions, in class action litigation, it is my opinion that the proposed Settlement in this Litigation is fair, adequate, and reasonable, so as to satisfy the requirements for preliminary and, ultimately, final approval pursuant to Fed. R. Civ. P. 23. This opinion is shared by Court-appointed Co-Lead Counsel, E. Michelle Drake, Douglas McNamara, Karen Riebel, and Charles Schaffer, and the Court-appointed members of the Settlement Committee, Brian Gudmundson, Jonathan Jagher, and Norman Siegel, all of whom played a role in negotiating and finalizing the Settlement.

**BACKGROUND ON THE ARIETIS DATA BREACH**

6. The Settlement resolves claim asserted against Arietis Health, LLC ("Arietis") for a data breach that resulted from Arietis's use of MOVEit Transfer, a file transfer tool created by Progress Software Corporation ("PSC").

7. MOVEit Transfer is a subscription-based managed file transfer software licensed by PSC and used by numerous commercial entities and federal and state agencies, including Arietis.

8. Between May 27, 2023, and May 31, 2023, CL0P Ransomware Gang identified and exploited a vulnerability in MOVEit Transfer that allowed them to access the data contained therein (the "MOVEit Data Breach"). CL0P used the MOVEit vulnerability to escalate user privileges, gain unauthorized access to customer environments, and access, copy, and exfiltrate the sensitive information stored there. PSC later warned that an unauthenticated iSQLi vulnerability could allow unauthorized actors to escalate privileges and access users' MOVEit environments.

9. According to CL0P's website on the dark web (where it makes available data that it steals), the MOVEit Data Breach resulted in the theft of information from Arietis. Arietis provides revenue-cycle management services to healthcare organizations, including medical billing software and financial analyses to track patient care, ensure proper coding, and manage patient billing.

10. After CL0P indicated that it had obtained data from Arietis during the MOVEit Data Breach, Arietis performed an investigation. Its investigation determined that data from Arietis's customers had been taken due to an exploit of the MOVEit vulnerability. The stolen information concerned patients of Arietis's customers (who are largely healthcare providers), including their: (1) date of birth; (2) Social Security Number; (3) driver's license number; (4) parent's maiden name; (5) digital signature; (6) medical record number; (7) patient account number; (8) Medicare number; (9) Medicaid number; (10) health insurance account and group number; (11) medical history information; (12) medical diagnosis information; (13) medical treatment/procedure information; (14) medical provider information; (15) clinical information; and (16) prescription information.

11. Arietis determined that over 1,975,066 individuals had their information stolen due to Arietis's MOVEit-related security incident. On or around September 2023, Arietis begin issuing individual notices of the incident.

12. Plaintiffs are patients of healthcare entities that retained Arietis. Each received notice from Arietis that their information was impacted by Arietis's data breach. They filed eleven separate actions related to Arietis's MOVEit-related data breach in federal court. Those actions include: (1) *Schaffer v. Arietis Health, LLC*, No. 2:23-cv-00845 (D. Mass.); (2) *Frankeberger v. Arietis Health, LLC*, No. 2:23-cv-00875 (D. Mass.); (3) *Sligh v. Arietis Health, LLC*, No. 2:23-cv-00980 (D. Mass.); (4) *Gentry v. Arietis Health, LLC*, No. 2:23-cv-00926 (D. Mass.); (5) *Zeigler v. Arietis Health, LLC*, No. 2:23-cv-00919 (D. Mass.); (6) *Seidner v. Arietis Health, LLC*, No. 2:23-cv-00944 (D. Mass.); (7) *Paynter, et al. v. Arietis Health, LLC*, No. 1:23-cv-12524 (D. Mass.); (8) *Oguin v. Arietis Health, LLC*, No. 4:23-cv-00817 (D. Mass.); (9) *Hayden v. Arietis Health LLC, et al.*, Case No. 1:23-cv-12736 (D. Mass.); (10) *Hakemi v. Progress Software Corp., et al.*, Case No. 1:24-cv-10031 (D. Mass); and (11) *Swekowski v. Arietis Health, LLC, et al.*, No. 1:23-cv-13077 (D. Mass.) (collectively, the "Related Actions").

13. Several Plaintiffs also named as defendants PSC, certain NorthStar Anesthesia entities, Anesthesia Consulting & Management, LP, or some combination of the three. NorthStar Anesthesia and, the company that owns it, Anesthesia Consulting & Management, LP (collectively, "NorthStar") is a healthcare provider located through the country. NorthStar retained Arietis as a service provider and provided Arietis with their patients' data, including the Plaintiffs' and Class's information.

14. Additionally, one state-court plaintiff, Tamara Taylor, filed an individual (non-class) state court complaint in Volusia County, Florida, captioned *Taylor v. Arietis Health, LLC*,

Case No. 2024 10187 CICI (Fla. Cir. Ct., 7th Jud. Cir., Volusia Cnty.). That case has not been consolidated with the federal actions and is proceeding on its own.

15. The Related Actions (excluding the state court action) were consolidated in this Court pursuant to the MDL formed by the Judicial Panel on Multi-District Litigation for the entire MOVEit Data Breach. *See In re: MOVEit Customer Data Sec. Breach Litig.*, No. MDL 3083, 1:23-md-3083 (D. Mass.).

16. On January 19, 2024, the Court appointed myself and several additional attorneys, E. Michelle Drake, Douglas McNamara, Karen Riebel and Charles Schaffer, as Lead Counsel for all plaintiffs who filed actions consolidated in the MDL.

**MEDIATION AND SUBSEQUENT NEGOTIATIONS**

17. Lead Counsel and counsel for Arietis agreed to an early mediation of the Related Actions to attempt to resolve Arietis's liability for the MOVEit-related breach.

18. The parties agreed to mediate with Hon. Diane M. Welsh (Ret.), who mediated several other cases in the MOVEit MDL, one of which separately settled.

19. Prior to mediation, the parties engaged in informal discovery, in which Plaintiffs propounded certain information requests on Arietis and exchanged extensive information about Arietis's data breach, including information on Arietis's use of MOVEit Transfer, on the types of information Arietis exchanged via MOVEit Transfer, on the cause and scope of the breach, the number of individuals impacted, the types of information taken. This information was reviewed by the Settlement Committee and myself and provided the information Lead Counsel and the Settlement Committee needed to objectively evaluate the strengths and weaknesses for Plaintiffs' and Settlement Class Members' claims.

20. On April 30, 2024, the parties engaged in a mediation before Judge Welsh. The good-faith, hard-fought negotiations did not initially result in an agreement.

21. At the proposal of Judge Welsh, the parties continued to negotiate in an attempt to reach an agreement. Following the mediation, the parties continued to engage in extensive arm's length settlement negotiations during which, Arietis indicated that it lacked the ability to fund a settlement of the claims asserted against it, beyond the amount remaining on its insurance coverage.

22. The Settlement Committee and I thereafter issued a new settlement demand on Arietis in furtherance of the parties' settlement discussions, in an amount the Plaintiffs understood to represent the remaining amounts of insurance coverage available to Arietis. This amount was contingent on Arietis confirming in court documentation as to its financial condition and inability to pay any other amount.

23. After a series of further arm's length discussions, the parties agreed to the basic terms of the settlement.

24. Over the course of several months, the parties continued to negotiate the Settlement details. On August 12, 2024, the parties executed the final Settlement Agreement.

**THE SETTLEMENT AGREEMENT PROVIDES SIGNIFICANT BENEFITS TO THE CLASS**

25. The Settlement resolves claims against Arietis concerning its MOVEit-related security incident. It does not resolve claims against PSC or NorthStar, defendants that some Plaintiffs also named in their actions against Arietis.

26. Under the Settlement Agreement, Arietis has agreed to pay $2.8 million into a Settlement Fund to resolve Plaintiffs' and the Settlement Class's claims. The Settlement Fund will pay for: (1) costs of Notice and Settlement administration; (2) any service awards for the Class

representatives approved by the Court; (3) any attorneys' fees and expenses approved by the Court; and (4) Settlement Payments for the Settlement Class pursuant to the Settlement and the Benefits Plan, as approved by the Court. The Settlement also requires Arietis to undertake business practices changes specifically designed to prevent future data breaches arising out of defective third-party products or tools.

27. The Settlement provides relief to those whose personal information, health care information, or both were provided to Arietis and who were affected by Arietis's MOVEit-related security incident.

28. The "Settlement Class" includes all persons in the United States who provided their personal information and/or personal health information—including: (1) dates of birth; (2) Social Security Numbers; (3) driver's license numbers; (4) parent's maiden names; (5) digital signatures; (6) medical record numbers; (7) patient account numbers; (8) Medicare numbers; (9) Medicaid numbers; (10) health insurance account and group numbers; (11) medical history information; (12) medical diagnosis information; (13) medical treatment/procedure information; (14) medical provider information; (15) clinical information; and (16) prescription information—to Arietis, directly or indirectly, and whose personal identifying information and/or personal health information was included in files affected by the MOVEit Security Incident.

29. The Settlement requires that the remaining Settlement Fund (after deducting for notice and administration, Class Representative service awards, and attorneys' fees) be distributed via a Settlement Benefits Plan created by Co-Lead Counsel and the Settlement Committee.

30. Co-Lead Counsel, with the assistance of the Settlement Committee, created a Settlement Benefits Plan designed to provide Settlement Class members with relief aimed at the heart of the harm caused by a data breach—out-of-pocket losses due to fraud, identity theft, or

other harm resulting from the data breach; compensation for lost time spent responding to Arietis's MOVEit-related security incident; and medical data monitoring, credit monitoring, and identity theft protection services.

31. Specifically, Settlement Class members may submit a claim for one or more of the following:

a. Reimbursement of Out-Of-Pocket Losses. Settlement Class Members who submit an attested claim for reimbursement of Out-of-Pocket Losses may submit a claim up to $5,000.00 per individual for documented out-of-pocket losses. In order to receive reimbursement of extraordinary losses, the out-of-pocket loss must: (1) be an actual, documented, and unreimbursed monetary loss; (2) the loss was more likely than not caused by the MOVEit Security Incident; and (3) the loss occurred between May 31, 2023, and the close of the Claims Period.

   i. The categories of reimbursable out-of-pocket losses includes, among other things: (1) Unreimbursed fraud suffered; (2) Long distance telephone charges; (3) Cell phone minutes (if charged by the minute); (4) Internet usage charges (if charged by the minute or incurred solely as a result of the data incident; (5) Credit monitoring or fraud resolution services; (6) Costs of credit reports; (7) Bank or other financial institution charges incurred as a result of the data incident; or (8) Other losses directly and reasonably incurred as a result of the data incident

b. Reimbursement for Time Spent Claims. Settlement Class Members may submit a claim for lost time dealing with the data incident at $25.00 per hour up to a

maximum of four hours upon attestation and a narrative description that time was spent dealing with the consequences of the data incident; and,

c. Medical Data and Credit Monitoring and Identity Theft Protection Services. Settlement Class Members may also elect to enroll in four (4) years of medical and credit monitoring services that will include, among other services: (a) healthcare insurance plan ID monitoring that tracks and alerts when a plan ID is exposed on the dark web; (b) Medical Record Number (MRN) monitoring that alerts when a medical record number is detected on the dark web; (c) National Provider Identifier (NPI) monitoring to track and alert when registered licensing credentials are found on the dark web; (d) Medicare Beneficiary Identifier (MBI) that alerts when MBI has been disclosed on the dark web; (e) International Classification of Diseases (ICD) monitoring, which notifies when an ICD Code is detected on the dark web; (f) health savings account monitoring, which monitors registered health savings accounts for unusual or unauthorized transactions (g) $1 million of medical identity theft insurance with no deductible. Settlement Class Members who elect to enroll in medical monitoring services will also receive four years of one bureau credit monitoring.

32. The out-of-pocket losses are intended to provide relief for costs commonly incurred due to data breaches, including unreimbursed fraud, telephone or cell phone charges, internet usage charges, credit monitoring, or costs of credit reports bank of financial institution charges. Reimbursement for lost time, similarly, is intended to provide relief for time incurred responding to Arietis's data breach, including, for example, monitoring accounts, even if those actions did not cause an out-of-pocket loss. Finally, the medical, credit, and identity theft monitoring prevents

harm from the future misuse of the impacted data, a risk all Settlement Class members face due to having their personal and medical information stolen.

33. If the total value of all Approved Claims exceeds the Net Settlement Fund available for distribution to Settlement Class Members, then the duration of the claimed medical and credit monitoring services will be reduced *pro rata* to the longest duration that will allow all Approved Claims to be paid using the Net Settlement Fund.

34. To the extent any amount of the Net Settlement Fund remains after payment for claims and monitoring or to the extent any of the Approved Claims for reimbursement are unclaimed, the remaining amount will be allocated as follows: (1) the remaining funds will be used to fund the maximum allowable duration of medical, credit, and identity theft monitoring services; (2) to the extent any amount is remaining after increasing the duration of medical, credit, and identity theft monitoring services, the remaining funds will be distributed *pro rata* to the Class members who submitted valid claims for out-of-pocket losses, lost time, or both, unless the administrative costs of such a disbursement exceed the value of the remaining funds; (3) if the administrative costs of disbursing the remaining funds *pro rata* exceed the value of the remaining funds, then the remaining funds will be given to a *cy pres* recipient, as approved by the Court. Either way, no amount of the Settlement Fund would revert to Arietis. *Id.* ¶ 34. To the extent that the Net Settlement Fund is insufficient to pay all approved claims for out-of-pocket losses, lost time, or medical, credit, and identity theft monitoring, then the Administrator will *pro rata* decrease the amount of any approved claims for out-of-pocket losses and lost time.

**THE NOTICE PLAN IS THE BEST PRACTICABLE**

35. The Settlement proposes a Notice Plan requiring direct notice to be emailed or, alternatively, mailed to each Settlement Class member. The Settlement Administrator, Epiq Class

Action & Claims Solutions, Inc. ("Epiq") will be responsible for issuing notice according to the Settlement's terms.

36. Under the Settlement, Arietis will provide a list of Settlement Class members within 60 days after the entry of an order preliminarily approving the Settlement. Epiq will undergo efforts to update the Settlement Class list to ensure accurate addresses.

37. For the purposes of effectuating individualized, direct Notice Epiq shall send Short From Notice with pertinent information regarding the Settlement Agreement via email where possible and via US mail address where no email is available or for those whose email addresses are undeliverable.

38. The Settlement Administrator shall also establish a Settlement Website, which will include the Settlement Agreement, relevant pleadings, the Long Form Notice, any relevant Court orders regarding the Settlement, and a list of frequently asked questions mutually agreed upon by the Parties. The Long Form Class Notice describes plainly: (1) Settlement Class members of the allegations asserted in the Actions; (2) details of the Settlement's benefits; (3) how to file a claim; (4) how Settlement Class members can exclude themselves from the Settlement or object to the Settlement; (5) how to access the Settlement Website; and (6) contact information to learn more about the Settlement or answer any questions about filing a claim, submitting an objection, or opting out. Additionally, Arietis will post notice on its website. The Notice Plan is consistent with other effective, court-approved settlement notice programs, including those involving payment card data breaches, and is the best notice practicable. Under the Notice Plan, the parties expect virtually all Class members to receive direct notice and will engage in other means if it becomes apparent that some Settlement Class members had not received notice. *See id.* at § 10.2(a). I believe the proposed Notice Plan represents the best practicable Notice to Settlement Class

Members and satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(b).

**REQUEST FOR SERVICE AWARDS AND ATTORNEYS' FEES AND EXPENSES**

39. Under the Settlement Agreement, Co-Lead Counsel may move the Court for award of attorneys' fees and expenses and for payment of Class Representative service awards up to $2,500 per Settlement Class Representative.

40. Any amount awarded by the Court for service awards and attorneys' fees and expenses will be paid from the Settlement Fund.

41. The Settlement is not contingent on the Court's approval of the payment of any attorneys' fees or expenses.

**THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

42. Co-Lead Counsel and the Settlement Committee have reviewed the proposed Claim Form and the Notices to be used by the Settlement. The Claim Form is simple and straightforward and requires only the provision of very basic information. Based upon my experience with the settlement of other class action data breach cases on behalf of financial institutions and consumers, Co-Lead Counsel believe that the simplicity of the Claim Form will increase participation from Settlement Class Members.

43. In this case, Co-Lead Counsel and the attorneys on the Settlement Committee have experience litigating complex and class actions and have demonstrated particular success in litigating data security breach class actions. Co-Lead Counsel and the Settlement Committee have vigorously pursued the Related Actions and represented the interests of Plaintiffs and the Settlement Class, and have a strong understanding of the strengths and weakness of Plaintiffs' claims based on their experience, their knowledge obtained from representing Plaintiffs in the

MDL, the exchange of information related to the Arietis' breach, and their vigorous mediation efforts. Co-Lead Counsel and the Settlement Committee, thus, have adequate information to assess the reasonableness of the Settlement.

44. Based on our experience and expertise, Co-Lead Counsel and the Settlement Committee believe that the settlement is fair, adequate, reasonable, an excellent result for the Settlement Class, and represents a desirable resolution of this Litigation. Generally speaking, there are many impediments to victory for victims of a data breach pursuing litigation, as well as significant impediments to class certification. In this case, all these uncertainties and impediments are present, as well as the additional issue presented by the fact that this data breach occurred as part of a much larger data breach involving PSC and its product MOVEit, which was used by hundreds of businesses impacted by the MOVEit Data Breach. The risks are further present with respect to Arietis because of their financial condition which, based on information exchanged during mediation, is such that, even if Plaintiffs were to succeed in litigation in the face of great expense and uncertainty, they still face a risk that they could not meaningfully recovery from Arietis.

45. Given these litigation risks, this Settlement is an excellent result in a complex, high-risk, hard-fought case that provides a substantial recovery for Plaintiffs and the Class who face significant future risk and, for some, have already experienced harm due to the data breach.

46. Because the Settlement represents a fair and reasonable recovery on behalf of the Plaintiffs and the proposed Settlement Class, Co-Lead Counsel and the Settlement Committee believe that the Court should preliminarily approve the Settlement and direct Notice to be issued to the Settlement Class.

47. Attached to this Declaration as Exhibit 1 is a true and correct copy of the Class Action Settlement Agreement & Release, including Settlement's exhibits as follows:

a. Exhibit A: a copy of the proposed Claim Form;

b. Exhibit B: a copy of the proposed Final Approval Order and Judgment;

c. Exhibit C: a copy of the proposed Order of Preliminary Approval;

d. Exhibit D: a copy of the proposed Short Form Notice;

e. Exhibit E: a copy of the proposed Long Form Notice; and,

f. Exhibit F: a copy of the proposed Reminder Notice.

48. Attached to this Declaration as Exhibit 2 is a true and correct copy of the Settlement Benefits Allocation Plan.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 29, 2024.

Gary F. Lynch

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, the foregoing document was filed electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated: August 29, 2024

*/s/ Kristen A. Johnson*
Kristen A. Johnson (BBO# 667261)